**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHARLES JEFFREY BELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:19-cv-00149** |
| **v.** | ) | **Judge Richardson / Frensley** |
| | ) | |
| **ANDREW M. SAUL, COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 17. Plaintiff has filed an accompanying Memorandum of Law. Docket No. 18. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19. Plaintiff has filed a Reply. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on November 13, 2015,[1] alleging that he had been disabled since January 1, 2011, due to "Carpal Tunnel on Both Hands," "Numbness in Hands and Wrists," "Pain in Back and Neck," "Knee Pain," "Can't Read or Write," "Stomach Issues," "Spastic Colon," and "COPD." *See, e.g.*, Docket No. 15, Attachment ("TR"), pp. 176-84, 195. Plaintiff's application was denied both initially (TR 94) and upon reconsideration (TR 112). Plaintiff subsequently requested (TR 141-43) and received (TR 60-93) a hearing. Plaintiff's hearing was conducted on August 21, 2017, by Administrative Law Judge ("ALJ") Renee S. Andrews–Turner. TR 60. Plaintiff and Vocational Expert, Bobby Hammond, appeared and testified. *Id.*

On April 26, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 18-30. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since October 15, 2015, the application date (20 CFR 416.971 *et seq.*) (3D-6D).
>
> 2. The claimant has the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease (COPD), status post bilateral carpal tunnel syndrome release, psoriatic arthritis, mood disorder, and mild intellectual disability (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR

[1] Plaintiff's application has a protective filing date of October 15, 2015. *See* TR 174-75.

416.967(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for 6 hours; sitting for 6 hours; occasionally balance, stoop, kneel, crouch, crawl, and climb; frequently handle, finger, push, and pull with bilateral upper extremities; should avoid concentrated exposure to vibration; should avoid even moderate exposure to extreme cold; can understand, remember and carry out simple instructions; occasional interaction with the public, coworkers and supervisors; can adapt to gradual changes in the workplace.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on December 9, 1971 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 15, 2015, the date the application was filed (20 CFR 416.920(g)).

TR 23-30.

On May 7, 2018, Plaintiff timely filed a request for review of the hearing decision. TR 172. On September 25, 2018, the Appeals Council issued a letter declining to review the case (TR 5-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different

4

conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)    If the claimant is working and the work constitutes
>        substantial gainful activity, benefits are automatically
>        denied.

(2)     If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)     If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4)     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5)     The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the

---

[2]  The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff contends that the ALJ: (1) improperly analyzed the opinion of the State agency psychological examiner; (2) failed to properly evaluate whether Plaintiff's intellectual disability met or equaled a Listing; and (3) failed to perform a proper credibility analysis. Docket No. 18. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. ALJ's Weighing of the Opinion Evidence

Plaintiff first contends that the ALJ failed to properly analyze the opinion of Larry Parker, PhD, the State agency psychological examiner. Docket No. 18, p. 6, *citing* TR 302-18. In so doing, Plaintiff recounts Dr. Palmer's testing observations and findings, and further recounts Dr. Palmer's opinions that Plaintiff: (1) "had severe limitations in maintaining concentration, persistence, and pace"; (2) "had moderate limitations in understanding, remembering, social interaction, and adaptability"; (3) had a diagnosis of "mood disorder due to general medical condition, intellectual disability mild, and partner relational problem"; and (4) "would not be able to manage his own funds without assistance." *Id.* at 7-9, *citing* TR 314-15. Plaintiff argues that SSR 85-15 "defines the basic mental demands of competitive, remunerative, unskilled work to include the abilities on a sustained basis to understand, remember, and carry out simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* at 10. Plaintiff argues that Dr. Palmer's opinion contains "far greater, and more detailed limitations than are included in the ALJ's RFC finding," and that, "[b]ased on the authority just described with respect to the 'basic mental demands of work,'" "Dr. Palmer's opinion met Plaintiff's burden to come forward with evidence establishing that he is 'disabled' pursuant to the Agency's definition of that term." *Id.*

Plaintiff also essentially argues that because the ALJ failed to properly analyze Dr. Palmer's opinion, the ALJ's RFC determination was flawed, as were the hypothetical questions

posed to the VE, such that the ALJ could not rely upon the testimony of the VE to establish a significant number of jobs in the national economy that Plaintiff could perform. *Id.* at 10-11. Plaintiff further contends that the ALJ's decision-making process was erroneous because the ALJ: (1) in her RFC finding "does not describe with specificity <u>all</u> the practical effects of <u>all</u> the claimant's demonstrated impairments" (*Id.* at 10) (emphasis original); (2) "was required by law to consider but did not acknowledge or discuss at all" the factors in 20 CFR 416.927(c) (*Id.* at 11-12); and (3) failed to give Dr. Palmer's observations enough weight, instead substituting "the ALJ's lay opinion for that of the examining expert source" (*Id.* at 13), *citing Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).

Plaintiff also argues that the ALJ erroneously rejected "the severe limitations in Dr. Palmer's opinion [on the basis that] Dr. Palmer's exam indicated Plaintiff had no problems focusing/concentrating." *Id.* at 12. Plaintiff maintains that,"[w]hile it is true that Dr. Palmer noted Plaintiff could focus and concentrate *during the exam itself*, the ALJ failed to recognize or discuss that that [*sic*] Dr. Palmer *conducted testing* of Plaintiff's ability to sustain attention, concentration and exert mental control." *Id.* at 12-13 (emphasis original). Plaintiff also claims the ALJ erred in finding Plaintiff to have an "*unfettered* ability to perform simple instructions," arguing that such conclusion is "plainly at odds with Dr. Palmer's actual opinion." *Id.* at 14, *citing* TR 25-26 (emphasis original). Finally, Plaintiff argues that the ALJ erred in rejecting Dr. Palmer's opinion by finding that Plaintiff "could perform detailed work . . . without discussing the *testing* he performed of Plaintiff's ability to sustain attention, concentration and exert mental control." *Id.* at 14-15, *citing* TR. 28, 312 (emphasis original).

Plaintiff reiterates that the record contains only one opinion from an examining source regarding Plaintiff's mental limitations; namely, that of Dr. Palmer, and asserts that the ALJ

failed to provide good reasons for discounting some of Dr. Palmer's mental limitations that are specific and supported by the record. *Id.* at 11-12. Plaintiff further maintains that the ALJ failed to acknowledge Dr. Palmer's status with the Agency and further failed to acknowledge Dr. Palmer's examining status, both factors which would entitle Dr. Palmer's opinion to be accorded greater weight. *Id.* at 12. Plaintiff asserts that the ALJ's articulated justification for discounting parts of Dr. Palmer's opinion are insufficient as it is an impermissible substitution of the ALJ's lay opinion, does not comply with the regulations as it fails to take into account the subtest test findings, and fails to consider that it is a prospective opinion regarding what Plaintiff would or would not be able to do on a full-time, regular work setting in a competitive and continuous basis, not on a single office visit. *Id.* at 13. Plaintiff relatedly maintains that, despite according "great weight" to Dr. Palmer's opinion, except for the "severe" limitations, the ALJ failed to acknowledge or discuss Dr. Palmer's opinion that Plaintiff is unable to perform daily responsibilities "and work tasks." *Id., citing* TR 314. Plaintiff notes that the RFC purportedly based upon Dr. Palmer's opinion describes an "*unfettered* ability to perform simple instructions, a conclusion plainly at odds with Dr. Palmer's actual opinion." *Id., citing* TR 25-26 (emphasis original). Plaintiff argues:

> To put it simply, the ALJ's acceptance of Dr. Palmer's conclusions when she gave the opinion "great weight," but subsequent failure to include this limitation *as stated in the consultative examination report without explaining why the limitation was excluded* in the RFC is contrary to the absolute obligation of an ALJ to explain her decision in a way that permits meaningful judicial review. If an ALJ accepts a medical opinion, she must include the established limitations in the RFC finding. If not, she must *explicitly* explain why the limitation was excluded.

*Id., citing Wilson*, 378 F. 3d at 544, *quoted in Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (emphasis original).

As to the opinions of the State agency psychological consultants, Plaintiff argues that they "suffer from the same defect as the ALJ's analysis"; namely, they reject Dr. Palmer's limitations without discussing the testing he performed. *Id.* at 14-15, *citing* TR 100-01, 118-19, 312. Plaintiff notes that the ALJ had several options available to seek clarification if the ALJ had questions regarding Dr. Palmer's opinions, but she did not avail herself of them. *Id.* at 15. Plaintiff concludes that, for all the reasons discussed, "the ALJ's decision is not supprrted by substantial evidence; the issues related to the ALJ's rejection of opinion evidence are such that they can only be addressed by a remand for further proceedings." *Id.*, *citing Atrium Med. Ctr. v. Dep't of Health & Human Servs.*, 766 F.3d 560, 568 (6th Cir. 2014).

Defendant responds that, when evaluating Plaintiff's subjective complaints and RFC, the ALJ properly considered the medical opinions of record, including Dr. Palmer's January 2016 mental consultative examination, Dr. Keown's January 2016 physical consultative examination, Dr. Terrence Leveck's September 2017 physical consultative examination, and the State agency medical consultants' reviews. Docket No. 19, pp. 9-10, *citing* TR 22-24, 99-107, 117-25, 298-300, 302-15, 355-68. With regard to Plaintiff's mental impairments specifically, Defendant responds that the ALJ properly resolved the conflicts between the January 2016 opinion of examining consultant Dr. Palmer, the January 2016 opinion of reviewing agency consultant Dr. de la Torre, and the August 2016 opinion of reviewing agency consultant Dr. Joslin. *Id.* at 12*, citing* TR 27-29. Specifically, Defendant asserts "the ALJ properly considered Dr. Palmer's opinion and accepted the portion of the opinion consistent with the record." *Id., citing* TR 27-28. Defendant contends that "[a]s a consultative examiner, the ALJ was not required to provide 'good reasons'" "for rejecting Dr. Palmer's opinion." *Id.* at 12-13, *citing Early v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-15 (6th Cir. 2010). Defendant further asserts that, in making her

findings regarding the conflicting medical opinions of record, "the ALJ properly accepted the limitations supported by the record from each opinion." *Id., citing* TR 25-26.

Plaintiff, in his Reply, argues that, "the most striking feature of Defendant's response is its silence on the central point of Plaintiff's argument. As Plaintiff demonstrated in his opening brief, Dr. Palmer, the Agency's psychological examiner's opined [sic] that he had *severe limitations* in his ability to maintain concentration, persistence, and pace with a conclusion that he is 'not able to perform . . . work tasks.' Pl. Brief, p. 10. The ALJ rejected this limitation but failed to observe that Dr. Palmer conducted testing to reach his opinion." Docket No. 20, pp. 1-2 (emphasis original). Plaintiff replies that both the ALJ and Defendant ignored the testing and the conclusion "that Plaintiff is unable to perform work tasks." *Id.* at 2. Plaintiff replies that Defendant's argument is simply a "parroting" of the ALJ's insufficient analysis, and Plaintiff argues that "Defendant does not dispute that an ALJ's lay evaluation of the record is not a legitimate basis to deny benefits"; does not dispute that when the RFC finding does not accurately set forth all the practical effects of all the claimant's impairments that the RFC is contrary to law and any vocational testimony based upon the inaccurate RFC is not substantial evidence supporting an ALJ's denial of benefits"; and "does not dispute that if all of Dr. Palmer's limitations were included in the RFC finding, Plaintiff would be precluded from all competitive employment." *Id.* (emphasis original). Thus, Plaintiff maintains that the ALJ did not properly evaluate Dr. Palmer's opinion.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the

following factors in deciding the weight we give to any medical opinion.

(1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added).  See also 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[3]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.,* 561

_____

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or

F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The ALJ considered the medical evidence relevant to her RFC findings as follows:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with 20 CFR 416.927. In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not sustained by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

> The claimant alleged problems with depression and reported he was in special education in classes in school and was illiterate (5F/11F). The claimant smoked a pack of cigarettes a day for over 3 decades (11F). In a Function Report completed by Angel Bell on the claimant's behalf, it was indicated that he fell off a ladder and,

---

makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

as a result, has difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, and using his hands (5E).

In May 2012, the claimant presented to Dickson Orthopedic Sports Medicine (OSM) with right shoulder pain. However, a radiograph of the right shoulder was normal. In April 2013, he presented to Dickson OSM with complaints of right wrist pain and numbness 1 week status post bilateral carpal tunnel release. He also complained of thoracic spine pain that he stated was unimproved with previous treatment of muscle relaxers and pain medication. He indicated back pain was worsened by movement and lifting. Radiographs of the thoracic spine demonstrated no acute changes. Upon examination, he had an easily elicited Phalen's and Tinel's sign to the bilateral wrists with some muscle atrophy to the hand and thenar eminence. There was no significant weakness on a handgrip strength test. He was treated with pain medication (1F).

In March 2014, April 2015, and December 2015, the claimant presented to the Dickson County Health Department (DCHD) for medication refills and with reports of a dry cough, wheezing, and joint pain/ numbness. He was treated with Albuterol inhaler and medication (3F/7F). In April 2016, the claimant presented to St. Sampson Medical Clinic for worsening pain and numbness in his neck, back, hands, knees, and ankles. It was noted his presentation as more overall consistent with psoriatic arthritis. He reported only mild benefit with Meloxicam and no benefit with a steroid taper (8F). In April 2016, May 2016, and November 2016 the claimant presented to the DCHD with complaints of muscle aches and joint/ hand pain (7F/9F/10F).

TR 26-27.

The ALJ then considered the medical opinion evidence relevant to Plaintiff's RFC and

made the following findings:

Medical opinions were provided by DDS state agency consultants along with consultative examiners, Dr. Donita Keown, Dr. Terrence Leveck, and Dr. Larry Palmer (2A/4F/5A/5F/11F). Dr. Keown noted the claimant's digits flexed and extended fully and he had a full range of motion of the wrists, joints, elbows, shoulders, hips, knees, and ankles. He complained of stiffness with rotation, flexion, and extension of the cervical spine. Straight leg raises were negative, and he had 5 out of 5 motor strength in his

arms and legs. He had a normal straightaway test, tandem step, toe lift, heel lift, and 1-foot stand. Dr. Keown noted his status post carpal tunnel release was stable. Dr. Keown noted the claimant could sit 6 to 8 hours, lift/carry without restriction, and should avoid pulmonary irritants. Her opinion was supported by the examination findings. Her conclusion that the claimant's carpal tunnel was stable was consistent with an examination at Exhibit 1F where he had no significant weakness on a handgrip strength test. For these reasons, Dr. Keown's opinion was given great weight (4F).

Dr. Leveck noted the claimant moved between the chair and examination table with mild difficulty. He found discrepancy on gait testing and possibly on strength testing of the left thumb. The claimant had normal strength of the elbows and knees. A Romberg test was negative. He had 4 out of 5 strength in the wrist, elbow, and handgrip. He slowly but accurately approximated his thumbs to fingertips. Dr. Leveck noted he had no heat, erythema, deformity, or edema of the hand to suggest arthritis that would account for the decreased opposition of the right thumb. He had a full range of motion of both hands with grip formation. He could pick up a pen readily with the right hand but with mild difficulty in the left hand. A Tinel's sign was positive bilaterally. Hip straight leg raising caused mild hip joint pain, and he had a negative straight leg raise on the left. His station was characterized by weight shift to the left lower extremity. He had mild distress with thoracolumbar spine maneuvers (11F).

Dr. Leveck opined the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; sit/ stand/ walk for 8 hours with 5-minute breaks every 2 hours; no reaching overhead on the right; occasional reaching overhead on the left, operating left foot controls, and climbing ramps/ stairs; occasional reaching in all other directions, finger, feeling, pushing, and pulling bilaterally; no operating right foot controls, climbing ladders/scaffolds, balancing, stooping, kneeling, crouching, or crawling; no exposure to unprotected heights, humidity, wetness, dusts, odors, fumes, pulmonary irritants, extreme heat/cold; occasional exposure to moving mechanical parts, operating a motor vehicle. Dr. Leveck found the claimant's grip strength was 4 out of 5 on the right hand and 3 out of 5 on the left hand, which was inconsistent with the occasional hand limits opined. However, the remaining postural and lifting/ carrying limits were consistent with the claimant's mild distress with thoracolumbar spine maneuvers and mild hip joint pain with straight leg raising. Therefore, Dr. Leveck's opinion was given partial weight (11F).

Dr. Palmer noted the claimant had average emotional energy and good attention and focus. Dr. Palmer indicated the claimant was oriented to time, place, and person. Dr. Palmer noted the claimant knew his address but not his Social Security number, date of birth, current date, the number of months in a year, or the number of states in the U.S. Dr. Palmer noted the claimant's overall insight and judgment appeared fair to poor. Dr. Palmer indicated the claimant's overall language skills appeared below average, and his fund of general knowledge, reasoning and abstract reasoning, problem solving, planning skills, and critical thinking skills appeared well below average. The claimant could not read a newspaper/ menu or perform simple math. As a result, Dr. Palmer estimated he was functioning in the mentally deficient range of general intelligence. The Weschler Adult Intelligence Scale (WAIS-IV) noted a full-scale IQ (FSIQ) composite score of 60, which was in the extremely low range. His scores on the Wide Range Achievement Test (WRAT-4) indicated he was performing below the kindergarten level in Word Reading and Sentence Comprehension and at the kindergarten level in spelling. He was at the 1st grade level in Math Computation. Dr. Palmer opined moderate limits in understanding/ remembering, social interaction, and adaptability and severe limits in concentration, persistence, and pace. The severe limits found were contradicted by Dr. Palmer's indication that the claimant had no problems focusing or concentrating during the assessment. However, the remaining moderate limits opined were consistent with Dr. Palmer's observations and testing. Therefore, his opinion was given great weight except for the severe/ extreme limits (5F).

DDS consultants found mild limits in activities of daily living and moderate limits in social functioning and concentration, persistence, and pace. They found the claimant could understand and perform simple and detailed tasks but not executive level tasks; sustain concentration, persistence and pace; interact appropriately with the general public, supervisors, and peers; would work better with things than with people; interactions with supervisors and coworkers should be superficial and task-focused; infrequent contact with the general public should be infrequent [*sic*]; can set short-term goals and adapt to gradual workplace changes. They found the claimant capable of less than a full range of light work with limited pushing/ pulling in both upper extremities and the performance of postural activities occasionally; limited bilateral handling and fingering; should avoid concentrated exposure to vibration (2A/5A). The moderate limits in social functioning were consistent with Dr. Palmer's evaluation at

Exhibit 5F. Their indication that the claimant could follow detailed instruction was unsupported by Dr. Palmer's assessment. However, the exertional limits opined by DDS consultants gave adequate consideration to the claimant's overall treatment with Dickson OSM and the DCHD for back/ shoulder/ wrist/ hand pain along with muscle aches and wheezing (1F/3F/7F/9F/10F).

The claimant testified he did not have any improvement in his symptoms following his carpal tunnel release. He reported that at times he cannot grab items and has difficulty tying his shoes and buttoning. He stated he feels like he has bone on bone grinding of his knee. He noted that his pain was not relieved by injections and that he uses his inhaler every 6 hours. He reported he could walk only 5 minutes at a time before having to rest for 10 minutes. He testified he could sit for 5 to 10 minutes and stand for 10 to 15 minutes. He reported irritability that interfered with his ability to interact with others.

While the claimant had residual limitation that precluded him from a full range of activities and tasks, he remained capable of performing work within the above residual functional capacity on a regular sustained basis. The medical evidence failed to show his pain was of the frequency and/ or severity to preclude all work. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

TR 26-29.

In the case at bar, the ALJ properly considered and weighed the medical, testimonial, and opinion evidence relating to Plaintiff's impairments. Addressing the opinion of Dr. Palmer, the ALJ noted that Dr. Palmer opined: "moderate limits in understanding/ remembering, social interaction, and adaptability and severe limits in concentration, persistence, and pace." TR 28. The ALJ found such opinion to be "consistent with Dr. Palmer's observations and testing," except for Dr. Palmer's opinion regarding Plaintiff's severe limitations because the severe limitations were inconsistent with his observations that "the claimant had no problems focusing

or concentrating during the assessment." *Id.* The ALJ articulated her reasons for giving some parts of Dr. Palmer's opinion great weight and for not giving great weight to other parts; those reasons were proper and the ALJ was not required to give greater weight to Dr. Palmer's opinion.

Despite Plaintiff's contention that the ALJ erred by not specifically describing "the practical effects of <u>all</u> the claimant's demonstrated impairments" (Docket No. 18, p. 10) (emphasis original), Plaintiff fails to cite any support for his notion that the ALJ must specifically and comprehensively articulate exactly which pieces of testimony she accepts and/or rejects, and the Regulations do not so require. Rather, the Regulations simply require that the ALJ state "the findings of fact and the reasons for the decision." 20 CFR § 416.1453(a). As the Sixth Circuit has noted, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Sec'y of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Further, any error committed by the ALJ in this regard would be harmless because the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the contradictory opinions of record. *See, e.g., Friend*, 375 F. App'x at 551; *Nelson*, 195 F. App'x at 470-72; *Hall*, 148 F. App'x at 464. As the ALJ was not required to make additional findings, and because her findings are substantially supported by the evidence of record, Plaintiff's argument on this ground fails.

As has been demonstrated the ALJ in the instant action articulated her findings of fact, and, using the information in the record, provided the rationale for her decision. TR 25-29. The ALJ therefore complied with the Regulations and her findings were supported by substantial evidence.

## 2. Listing 12.05B

Plaintiff next contends that "the ALJ erred in failing to properly evaluate Plaintiff's intellectual disability at step 3 of the sequential analysis (i.e., whether his intellectual disability met or equaled a listed impairment)." Docket No. 18, p. 15. Plaintiff cites to Listing 12.05B and its requirements, arguing that "the evidence demonstrates that Plaintiff meets the requirement of the Listing and the ALJ's finding to the contrary is not supported by substantial evidence." *Id.* at 16. Specifically, Plaintiff cites the "WAIS-IV intelligence testing conducted by Dr. Palmer" (*Id.* at 17, *citing* TR 312) and that "Dr. Palmer found no inconsistencies in the testing and determined them to be a valid assessment of Plaintiff's IQ." *Id., citing* TR 313. Plaintiff also cites to Dr. Palmer's finding that "Plaintiff had 'severe' limitations in maintaining concentration, persistence, and pace." *Id., citing* TR 314. Plaintiff states that the ALJ "improperly rejected this finding" (*Id., citing* TR 314) and "provided no explanation for" how Plaintiff "did not meet Listing 12.05" (*Id.* at 18). As a final point supporting this contention, Plaintiff asserts that "[t]he underlying record establishes deficits in adaptive functioning that supports the conclusion that his disorder began prior to age 22." *Id.* at 18. Plaintiff cites to the definition of an intellectual disability within the DSM-V and cites to evidence in the record showing "Plaintiff's [intellectual] deficits." *Id.* at 19-20. Plaintiff contends that such evidence "demonstrates that Plaintiff has had adaptive functioning deficits since the developmental period" and "the ALJ's failure to articulate a legally sufficient rationale with respect to Plaintiff's deficits in adaptive functioning requires that this case be remanded so that the Court may determine whether there is a reasonable basis for the decision." *Id.* at 21, *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1946).

Defendant responds that the ALJ "properly determined that Plaintiff did not meet or equal any Listing, including Listing 12.05B." Docket No. 19, p. 6, *citing* TR 23-25. As support, Defendant cites the ALJ's finding that "Plaintiff had no more than moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating persisting, or maintaining pace; or adapting or managing himself." *Id., citing* TR 25. Additionally, Defendant asserts: "[a]s Plaintiff did not have marked limitations in two areas or extreme limitations in one, the ALJ did not need to make a finding regarding the validity of the I.Q. score or whether Plaintiff had deficits prior to the age of 22." *Id.* n.4, *citing* TR 23-25. Defendant maintains that the ALJ properly considered Dr. Palmer's opinion and "found the severe limitation [opinion] inconsistent with Dr. Palmer's statements that Plaintiff had no difficulty maintaining focus and staying on task." *Id.* at 7, *citing* TR 28. Finally, Defendant argues that "[t]he ALJ's determination is consistent with the opinions of the state agency medical consultants" and "[a]s such, substantial evidence supports the ALJ's finding that Plaintiff did not have marked limitations or one extreme limitation." *Id., citing* TR 25.

In his Reply, Plaintiff argues that:

> The ALJ's error here has a contagion effect throughout the decision. Dr. Palmer's finding established that Plaintiff has met the second requirement of Listing 12.05B, Pl. Brief, pp. 17-18, a fact not disputed by Defendant. Def. Brief, pp. 5-7. Defendant cannot, and did not, attempt to argue that Plaintiff's I.Q. scores do not meet the first requirement of Listing 10.05B or that Plaintiff did not exhibit deficits in adaptive functioning prior to age 22, meeting the third requirement of Listing 12.05B. *Id.* Thus, it is also not disputed that crediting Dr. Palmer's findings results in a finding in Plaintiff's favor at step 3.

Docket No. 20, p. 3. Plaintiff also notes that "Defendant cannot, and did not, attempt to argue that Plaintiff's I.Q. scores do not exhibit deficits in adaptive functioning prior to age 22, meeting the third requirement of Listing 12.05B." *Id.* Finally, Plaintiff asserts that "the only appropriate

disposition of this case is to reverse the ALJ's decision and remand it to the Agency for further proceedings. *Id.* at 4.

In relation to the Listed Impairments, the ALJ stated:

> In making this finding, the undersigned considered the claimant's physical impairments in accordance with Listings 1.04 and 3.02 regarding disorders of the spine and chronic respiratory disorders. There was no evidence of nerve root compression, spinal arachnoiditis, or stenosis resulting in pseudo claudication. Therefore, the claimant did not meet Listing 1.04. The claimant did not have listing level Forced Expiratory Volume values or significantly abnormal arterial blood gas levels. Despite the claimant's combined impairments, the medical evidence does not document Listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any Listed impairment, individually, or in combination.

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

> In understanding, remembering, or applying information, the claimant has a moderate limitation. During a mental evaluation, he indicated he cannot read/ write and had trouble with short-term memory. It was noted he appeared able to understand/ answer questions and engage in conversation without difficulty. He indicated his daughter reminded him to take needed medication. He repeated 4 digits forward and 2 digits backward. He could immediately repeat 3 of 3 words and 1 of 3 words after 5-minute delay. He was unable to read a newspaper/ menu or perform simple math (5F).

In interacting with others, the claimant has a moderate limitation. He indicated he had been married twice; once for 13 years and once for 9 years. He stated he was separated from his current wife. He reported a legal history of jail time for driving under the influence and domestic assault. He stated he was on probation. He stated he did not spend time with friends outside of family and did not always get along well with others. He reported he did not desire to be around others or crowds (5F).

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation.  In a mental evaluation, he reported poor sleep and energy level (5F).  In a Function Report, he noted problems with concentrating and handling stress (5E).

As for adapting or managing oneself, the claimant has experienced a moderate limitation.  He stated he did not drive due to his license being revoked. He indicated he did limited household cleaning chores but did not cook or use a stove (5F).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.  In this case, the evidence fails to establish the presence of "paragraph c" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

Turning back to listing 12.05, paragraph A requires the following:

1. Significantly sub-average general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because the claimant reported he could independently perform self-care skills such as bathing, dressing, brushing his teeth, combing his hair, and picking out his clothes. He was fond [*sic*] to have average self-management life skills (5F).

Paragraph B requires the following:

1. Significantly sub-average general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because the claimant did not exhibit 2 marked limitations or one extreme restriction in any of the above areas.

TR 23-25.

With regard to Listing 12.05, "Intellectual Disorder," the Code of Federal Regulations states:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence;

or

   b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 CFR § 404, Subpt. P, App. 1, Listing 12.05.

As can be seen, the Regulations explicitly state that a plaintiff must meet the criteria in paragraph A or paragraph B to meet Listing 12.05. See 20 CFR § 404, Subpt. P, App. 1, Listing 12.05. As demonstrated in the ALJ's above findings, the ALJ in the case at bar considered the medical and opinion evidence regarding Plaintiff's mental impairments, found that Plaintiff did not meet the criteria for paragraph A or B of 12.05, and found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. TR 23-25. Even if the ALJ did not specifically mention the medical test administered by Dr. Palmer in forming his opinion that Plaintiff had a severe functional limitation in maintaining, persistence, and pace, the ALJ's finding that Dr. Palmer's opinion was inconsistent with his own observations of Plaintiff was not erroneous. Accordingly, the record contained evidence that substantially supports the ALJ's decision that Plaintiff did not meet a Listing.

Although Plaintiff contends that he met the criteria of 12.05(B)(3) (Docket No. 18-25), the ALJ's finding that Plaintiff did not have significant impairments in any of the 12.05(B)(2) criteria precludes a finding that he met the criteria for Listing 12.05(B) as a whole. Plaintiff's contention on this ground is without merit. Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a listing, the ALJ's decision must stand.

### 3. ALJ's Credibility Determinations

Lastly, Plaintiff contends that "Plaintiff was prejudiced because the ALJ failed to perform a proper credibility analysis." Docket No. 18, p. 21. As support, Plaintiff argues that the ALJ determined that Plaintiff's self-described "'intensity, persistence, and limiting effects'" (*Id.* at 23) were inconsistent with the record as a whole, but "she did not consider <u>any</u> of the 'other factors' in the decision." *Id.* (emphasis original). Plaintiff further states that the ALJ failed to consider: (1) Plaintiff's daily activities or how those "reported activities are consistent or inconsistent with the other evidence of record" (*Id.* at 24); (2) "the 'location, duration, frequency and intensity' of Plaintiff's pain" (*Id.*); (3) "'precipitating and aggravating factors'" (*Id.*); (4) "the 'type, dosage, effectiveness, and side effects of any medication' taken by Plaintiff" (*Id.*); (5) "'the treatments, other than medication'" (*Id.*); and (6) "'other factors' concerning her [*sic*] functional limitations" (*Id.*). Plaintiff argues that because "an ALJ *must* consider these factors *in addition to* the objective medical evidence in assessing Plaintiff's credibility" (*Id.* at 25, *citing* SSR 16-3p) (emphasis original), "remand is required for the ALJ to comply with applicable procedural requirements in assessing Plaintiff's credibility" (*Id., citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1946)).

Defendant responds that "[i]n finding Plaintiff capable of a restricted range of simple, light work, the ALJ considered the record as a whole, including Plaintiff's subjective complaints." Docket No. 19, p. 8, *citing* TR 23-29. Defendant further responds that "[t]he ALJ properly found Plaintiff's allegations inconsistent with the record as a whole, including the medical opinions, Plaintiff's medical treatment, and the medical evidence." *Id., citing* TR 23-39. Defendant argues, therefore, that "the ALJ's consideration of the subjective aspects of Plaintiff's complaints comported with the regulations at 20 C.F.R. § 416.929 (2018)." *Id.* at 8-9. Defendant also states that "Plaintiff argues that the ALJ did not discuss his medical treatment, but the ALJ specifically considered it in the decision," and found the medical evidence to be inconsistent with Plaintiff's allegations. *Id.* at 14, *citing* TR 26-28. Defendant contends that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff could perform a restricted range of simple, light work with postural, environmental, and social limitations and should be affirmed." *Id.* at 15.

Plaintiff, in his Reply, argues that "Defendant cannot dispute the facts set out in Plaintiff's opening brief regarding the ALJ's deficient credibility analysis." Docket No. 20, p. 3. Specifically, Plaintiff replies that the ALJ's failure to consider his daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and side effects of medications; treatment other than medication that has been attempted; "self-treatments" such as lying down; and "other facts" was harmful as "many of these factors provide clear support for [Plaintiff's] allegation yet nowhere in the decision did the ALJ address them." *Id.* Plaintiff replies that Defendant, like the ALJ, also "ignores them." *Id.* at 3-4. Plaintiff contends that because the Regulations require the ALJ to consider these factors,

but the ALJ failed to discuss them, "it is unclear whether the ALJ considered them at all." *Id.* at

4. Plaintiff therefore argues that remand is "the only appropriate disposition of this case." *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective

allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability . . . . [T]here must be
> evidence of an underlying medical condition and (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition or (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S.

Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929

("statements about your pain or other symptoms will not alone establish that you are disabled . . .

."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully

disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if

the subjective allegations, the ALJ's personal observations, and the objective medical evidence

contradict each other."). Moreover, "[a]llegations of pain . . . do not constitute a disability,

unless the pain is of such a debilitating degree that it prevents an individual from participating in

substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224,

1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage, and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994),

*construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

As shown above, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 28-29. The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony

(*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff could perform a modified range of light work. TR 25-29. In making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


JEFFERY S. FRENSLEY
United States Magistrate Judge

31